EMERSON–BRANTINGHAM IMPLEMENT CO. v. PREWITT MERCANTILE CO. et al. (No. 6763.)

(Court of Civil Appeals of Texas. Austin. July 2, 1924. Rehearing Denied Oct. 8, 1924.)

1. **Chattel mortgages ⬳68—Evidence held insufficient to support finding that seller of tractor had a mortgage on it.**

In an action by seller of a tractor against the buyer on a note and to foreclose a chattel mortgage, evidence *held* insufficient to support a finding that plaintiff had a mortgage on the tractor.

2. **Bankruptcy ⬳142—Trustee in bankruptcy proper party to attack transfer of note given by subsequent purchaser of tractor in fraud of creditors.**

In an action by a seller of a tractor against the buyer on a note and to foreclose an alleged mortgage on the tractor, that defendant transferred a note given it by subsequent purchaser of the tractor, in fraud of its creditors, would not avail plaintiff, since, under Bankruptcy Act, § 70 (U. S. Comp. St. § 9654), the trustee in bankruptcy of defendant was the proper party to attack the transfer.

Appeal from District Court, Williamson County; Cooper Sansom, Judge.

Action by the Emerson-Brantingham Implement Company against the Prewitt Mercantile Company and others. From a judgment for plaintiff as against the named defendant, and in favor of defendant the Ira A. Prewitt Company, plaintiff appeals. Affirmed.

Spence, Haven, Smithdeal & Spence, of Dallas, for appellant.
Wood & Wood and N. L. Taylor, all of Granger, for appellee Ira A. Prewitt Co.

McCLENDON, C. J. This was a suit upon a promissory note and to foreclose a chattel mortgage upon a tractor. The note was executed by the Prewitt Mercantile Company, which we will call the mercantile company, in favor of Emerson-Brantingham Implement Company, which we will call the implement company. It bore date August 11,

1920, and was due November 1, 1920. The tractor had been purchased by the mercantile company from the implement company, and then sold by the mercantile company to one Carpenter, who gave in part payment a note in favor of the mercantile company, secured by a chattel mortgage upon the tractor. This latter note was assigned by the mercantile company to the Ira A. Prewitt Company in December, 1920, or February, 1921. Carpenter later delivered the tractor to the Ira A. Prewitt Company in settlement of his note. In September, 1921, the mercantile company went into bankruptcy, and A. Robinson was appointed its trustee. This suit was brought by the implement company against the mercantile company for the amount of the note against A. Robinson, trustee in bankruptcy, to establish the claim in the bankruptcy proceeding, and against the Ira A. Prewitt Company as well as the mercantile company and Robinson, trustee, to foreclose the chattel mortgage on the tractor. The implement company had the tractor seized under a writ of sequestration. The defendants mercantile company and Robinson, trustee, made no defense. The Ira A. Prewitt Company, answering, claimed title to the tractor, denied the existence of plaintiff's alleged chattel mortgage thereon, asserted that it was a bona fide holder of the Carpenter note for value and without notice of the implement company's mortgage upon the tractor, if any it had, and prayed for judgment over against the implement company for the value of the tractor.

At the conclusion of the testimony the implement company moved for judgment in its favor for the amount of the note and foreclosure of its mortgage upon the tractor. The court overruled this motion, peremptorily instructed the jury to find for the implement company against the mercantile company the amount of the note and interest, and submitted to the jury for their determination, as the only issue in the case, the value of the tractor on March 13, 1922, the date it was sequestered, which value the jury found to be $900. Upon this verdict the trial court rendered judgment in favor of plaintiff against the mercantile company for $1,904.49, the amount of the note sued on, principal, interest, and attorney's fees, and established that sum against Robinson, trustee, as a claim to be enforced through the bankruptcy court, and in favor of the Ira A. Prewitt Company against the implement company for $900, with 6 per cent. interest thereon from March 13, 1922. From this judgment the implement company has appealed.

The various assignments of error are predicated upon the assertion that the evidence conclusively establishes two propositions: First, that the implement company had a mortgage on the tractor; and, second, that

whatever interest the Ira A. Prewitt company acquired therein was subject to this mortgage, because it purchased with notice of the implement company's rights.

[1] We have had no difficulty in reaching the conclusion that the evidence will not support a finding that the implement company had a mortgage upon the tractor. Manifestly this conclusion renders irrelevant every other issue raised by appellant, and requires a statement only of so much of the evidence as bears upon this issue.

Some time prior to July 29, 1920, the mercantile company notified the implement company that it had a "prospect" for a tractor and the latter sent one Allison to Granger to make a sale. As a result of these negotiations, the mercantile company executed a written order to the implement company, which specified that the tractor should be shipped from Austin to Granger at a certain net price, and that the mercantile company was to execute its note for $1,352.50, the cost of the tractor, less certain sums which the mercantile company was to pay. The order provided that the title to the tractor should remain in the implement company as security for the note, and that it should not be binding upon the implement company until accepted by the latter at Rockford, Ill., or by its branch house manager for the territory in which the order was given, notice of such acceptance to the dealer being waived. This order bore the notation:

"Accepted at Dallas, Jul. 31, 1920. Emerson-Brantingham Implement Company. By ———."

It was not filed in the chattel mortgage records until August 13, 1921.

The tractor was shipped from Austin to Granger by the implement company upon a shipper's order bill of lading. This bill of lading the implement company delivered to its agent, W. J. Daniels, whom it sent to Granger to effect delivery of the tractor and close the transaction. Daniels took with him a note and chattel mortgage with power of sale to be executed by the implement company. I. C. Prewitt, who represented the implement company in the matter, testified that:

"Plaintiff company sent a man to assist in getting the tractor started. Plaintiff company knew that the tractor had been sold by witness to Carpenter—knew that witness wanted to sell the tractor, and to whom he intended to sell it. When the plaintiff company's man came down to Granger to make delivery of the tractor to the Prewitt Mercantile Company, he wanted plaintiff to give a mortgage on the tractor, but witness refused to do it, telling plaintiff's agent that he (witness) did not have anything to mortgage; that the thing was sold, and he refused to sign the blank mortgage which the agent had brought. The agent then said he would communicate with the plaintiff company. He went off and stayed about 30 or 40 minutes. When he came back he presented to the witness the note sued upon, and the witness signed it for the Prewitt Mercantile Company, being the same note introduced in evidence by plaintiff. Witness had refused to sign the mortgage which the agent had brought along with the note."

Daniels testified:

"That he lives at Dallas, and in August of 1920 was employed by plaintiff company. He made a trip to Granger to deliver a tractor shipped by the company to that point and to start the tractor and show how to manipulate it, and to accept settlement for it—to have the papers signed. He was supposed to make delivery of the tractor satisfactorily. His instructions were to have the note signed and the chattel mortgage signed, and then give the invoice (bill of lading) which turned the tractor over to Mr. Prewitt. Mr. Prewitt executed the note; did not execute the chattel mortgage. He said he had in mind transferring the tractor to another man, and that he did not have anything to mortgage. Witness then telephoned the plaintiff's office at Dallas for further instructions, and talked to Mr. Gardner, manager of the tractor department of the Emerson company, from whom he had received his orders. He said, 'Waive the mortgage,' and witness did that—did not have Mr. Prewitt sign the chattel mortgage. He signed the note. After the note was signed, witness went with Mr. Prewitt to the freight office, got the tractor, drove it over to the Prewitt Mercantile Company's store, and it seemed that there was some man in the country that Prewitt desired witness to show how to manipulate the machine, and at his request witness stayed over until the next morning, when the man came in, who witness thinks was Mr. Carpenter, and he (witness) showed him how to manipulate the machine. Witness had some idea that there were some dealings between Mr. Prewitt and this man, but did not concern him, so he did not pay any attention to it."

Upon cross-examination this witness was shown the chattel mortgage which had been delivered to him to be executed by the implement company, and in response to questions propounded by the latter's attorney he testified:

"Q. That is the one that Prewitt said he didn't want to sign? A. Yes, sir.

"Q. That is the one that Gardner waived? A. Yes, sir.

"Q. Is that all that he waived? A. Yes, sir.

"Q. Now, in your statement a while ago you said that Mr. Gardner in his conversation said, 'Waive it.' Do you mean that he said 'Waive the execution of this chattel mortgage'—the 'execution of this chattel mortgage by Prewitt'? A. Yes, sir; that is the only thing in discussion over the phone.

"Q. Nothing was said about the order-contract? A. No, sir; I didn't know there was one.

"Q. Did Prewitt say anything about the order-contract he had already given? A. No, sir.

"Q. Did you say anything to him about his waiving or the company waiving the terms of the order-contract? A. No, sir."

The following is from C. H. Gardner's testimony:

"That he lives at Dallas, and on the 29th of July, 1920, was with plaintiff company as its assistant manager there. He then had charge of the tractor engine department. At that time the plaintiff company sold the tractor in controversy to the Prewitt Mercantile Company, through a salesman by the name of Allison. The order for the tractor was sent to the company's Dallas office, and came to the witness' desk. The tractor was shipped from Austin, Texas, consigned to the order of the plaintiff company, on an order bill of lading. Witness for the plaintiff company sent a man named Daniels to Granger to make settlement for the tractor, and gave him the form of note and the form of a chattel mortgage to be executed by the Prewitt Mercantile Company, giving the plaintiff company a lien on the tractor. Daniels called witness by telephone from Granger, and said that the Prewitt Mercantile Company objected to giving the chattel mortgage, and witness told Daniels to go ahead and complete the settlement without the chattel mortgage."

Upon cross-examination by counsel for the implement company he testified:

"Q. You say that when Mr. Daniels called up and said that Prewitt was unwilling to sign the mortgage, you told him that he could waive that?    A. Yes, sir.

"Q. Had you before that time accepted Mr. Prewitt's order-contract for this tractor?    A. Yes, sir.

"Q. That has been introduced in evidence— a certified copy has been introduced in evidence. As you know, of course, or did you not know that it retained the ownership of the property in the company until the purchase price was paid?    A. Yes, sir.

"Q. What you told Daniels, as I understand it, is that he might not insist, or might waive the execution by the Prewitt Mercantile Company of the other form of mortgage which you sent to him with this note?    A. Yes, sir.

"Q. Did you at any time, Mr. Gardner, and under any circumstances, for the company, waive reservation of title in that order-contract upon which you had sold the tractor?    A. No, sir.  *  *  *

"Q. What, if anything, did you tell Daniels about waiving anything except the execution of the second chattel mortgage which you had sent with the note? Did you authorize him to waive the reservation of title in the order-contract?    A. No, sir.

"Q. Did you waive it?    A. No, sir."

The implement company contends that the signed order for the tractor was accepted by it; that all it waived was the execution of an additional mortgage with power of sale; and that the contract between it and the mercantile company was represented by the order and the note. It should be added that the note contained the following:

"This note is secured by chattel mortgage."

We are unable to agree with this interpretation of the evidence. While the order was signed by the mercantile company, and might have been accepted without notice to it, the transaction was not completed until Daniels, who had full authority to bind the implement company, went to Granger and effected a delivery of the tractor to the mercantile company. The undisputed evidence of I. C. Prewitt and Daniels is that in the conversation between them Prewitt refused to execute a mortgage for the reason that he had sold the tractor and had nothing to mortgage. Daniels did not know of the previous signed order; nor was it mentioned in the conversation between him and Prewitt or between him and his superior, Gardner. The tractor was still in the possession of the implement company, and no notice had ever been given Prewitt that the order had been accepted. The transaction was then closed upon the basis that no mortgage should be given for the tractor, and the note was signed and the tractor delivered under that express understanding. No other interpretation, in our judgment, can be placed upon the testimony of the witnesses I. C. Prewitt and Daniels. What may have been in Gardner's mind when he talked to Daniels over the telephone has nothing to do with the transaction. His testimony does not show that his instructions to Daniels were only to waive the form of mortgage with which Daniels had been furnished and deliver the tractor under the original signed order. The clear import of this telephone conversation was to authorize Daniels to deliver the tractor to the mercantile company free from any lien or mortgage upon execution by the mercantile company of its note for the unpaid balance of the purchase price. Daniels so understood it, and acted accordingly. The evidence of these three witnesses upon this issue is free from conflict to a degree that is refreshing.

There was a great deal of testimony bearing upon the subsequent dealings of the parties. The note was not paid when it became due, and repeated efforts were made by the implement company to collect it. At one time it sent its personal representative to Granger to adjust the matter, and quite a lot of correspondence was had between the two companies. Some of these letters, written after the note had been transferred to the Ira A. Prewitt Company, show an evident purpose on the part of the mercantile company to conceal from the implement company the fact that the note had been so transferred. I. C. Prewitt, who conducted this correspondence for the mercantile company, conceded this fact, and explained it by the statement that the mercantile company was in financial straits, and he wanted, as he expressed it, to "get by." It is evident that the mercantile company was endeavoring to prevent suit against it on the note, and that to do so it deliberately misled the implement company. However reprehensible this conduct may have been, it

had nothing to do with whether there was a mortgage on the tractor.

[2] Much evidence was also introduced as showing that the transfer of the Carpenter note to the Ira A. Prewitt Company was not bona fide, and was fraudulent as to creditors of the mercantile company. If it were conceded that these contentions were established beyond controversy, it would not avail the implement company anything in the present suit. Whatever rights in the tractor or in the Carpenter note remained in the mercantile company or its creditors after the transfer passed to its trustee in bankruptcy; and, there being no mortgage on the tractor in favor of the implement company, the trustee in bankruptcy was the proper party as a representative of all the creditors to question the validity of the title asserted by the Ira A. Prewitt Company. Bankruptcy Act, § 70ʼ(U. S. Comp. St. § 9654); 7 C. J. p. 127.

Finding no error in the trial court's judgment, it is affirmed.